

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

March 15, 1939

Honorable H. P. McMillan
County Auditor
Robertson County
Franklin, Texas

Dear Sir:

> Opinion No. 0-301
> Re: Commissions on Robertson County
>      delinquent tax suits filed
>      against persons paying under the
>      partial payment plan of Article
>      7345c

This is in answer to your letter of February 4, 1939.

In that letter you state that on May 26, 1937, the Commissioners' Court of Robertson County entered into a contract with an attorney under which he was to collect all delinquent taxes; that the contract was to expire on December 31, 1938, except that the attorney was to have "six months" in which to prosecute to final judgment suits filed prior to December 31, 1938;"and that the attorney was to receive a commission of 13% on all amounts which he was instrumental in collecting.

You further state that "A number of delinquent taxpayers took advantage of the right to pay delinquent taxes on the installment basis" as prescribed in Article 7345c (Acts 1937, Forty-fifth Legislature, p. 923, ch. 442) of the Revised Civil Statutes of Texas. Your statement then says that in December, 1938, this attorney filed suit against these individuals who had taken advantage of this partial payment law, to-wit, Article 7345c; and while these suits are pending these individuals have continued to make their payments as prescribed in the law.

On the basis of these facts, you ask the following questions:

> "(1) Is the Contractor entitled to Commission on delinquent taxes collected from Individuals taking advantage of the partial payment plan, where payments were made prior to December 31st, 1938.

"(2) Is the Contractor entitled to Commission on delinquent taxes collected from Individuals taking advantage of the partial payment plan, against whom suits had been filed prior to December 31st, 1938, and payments made after January 1st, 1939, and before June 30th, 1939."

The answers to your questions involve a construction of Article 7345c (Acts 1937, Forty-fifth Legislature, p. 923, ch. 442); and we are quoting the parts of that statute that are material to this discussion:

"Section 1. On and after July 1, 1937, taxpayers owing delinquent State and County taxes, covering both real estate and personal property, shall be permitted to pay such delinquent taxes in partial payments under a system which shall be hereinafter provided for.

"Section 2. The Assessor and Collector of Taxes of each county of this State shall create and establish a partial payment or installment account system whereby all delinquent taxpayers desiring to pay their taxes under the provisions of this Act may do so.

"Section 3. All payments received by the Assessor and Collector of Taxes under the provisions of this Act shall be due and payable within twenty (20) months from the date of July 1, 1937, such payments being due and payable in ten (10) equal installments, provided that the first payment of such partial payments shall be made on or before September 1, 1937.

"Section 4. If after paying one or more installments, the delinquent taxpayer pays no further installment or installments for a period of four (4) months, all of the remaining installments of said delinquent taxes shall become due and payable, and it will thereupon become the duty of the County Attorney or District Attorney or Criminal District Attorney in counties where there is no County Attorney to institute suit for the collection thereof. * * *

"Section 12a. The provisions of this Act shall not affect any delinquent tax suits filed in courts of competent jurisdiction before the effective date of this Act in the counties or other political subdivisions availing themselves



of the provisions of this Act."

This law was passed by the Legislature that adjourned on May 22, 1937, and it did not go into effect until ninety days after adjournment.

It will be noticed that it provides that these delinquent taxpayers "shall be permitted to pay such delinquent taxes in partial payments" (Section 1), provided they do certain things, among which is paying the first installment by September 1, 1937 (Section 3). It is our conclusion that when they do those certain things they then have a right to pay those taxes in that manner, that is, in the partial payments prescribed by the statute; and it is a violation of the statute to compel them to pay them otherwise. The filing of a law suit against them for such taxes would be an attempt to compel them to pay them otherwise, and we believe that such a law suit is invalid and cannot be maintained.

The words of Section 4 also lead to this same conclusion. Section 4 provides that if, after paying one or more installments, the delinquent taxpayer fails to pay the other installments "it will thereupon become the duty of the County Attorney * * * to institute suit for the collection thereof." We believe that this provision also means that as long as they <u>do pay</u> the installments that the County Attorney, or any attorney who has the right to file tax suits, shall <u>not institute</u> suit for these taxes.

The words in Section 12a likewise support our belief. Section 12a provides that this Act shall not affect any delinquent tax suits filed before the effective date of the Act. It is logical to conclude that the Legislature intended by the use of this language that the Act should apply to any delinquent tax suits filed <u>after</u> the effective date; and if it did apply to those suits it would only mean that such suits could not be maintained.

According to the facts given, all of these suits were filed in December, 1930, which was after the effective date of this Act.

It is true that there was no consideration given to the State for granting an extension of time to the people who owe these taxes by the passage of this statute, but it is only in the case of debts created by contract that consideration is required in order to make an extension of time for payment valid. In Bender vs. Pfaff, (U.S. C.C.A.) 38 Fed. (2d) 649, the court said:

"* * * a tax is not a debt created by contract. It is created by law * * *."

In this case we are faced with the fact that this contract was entered into on May 26, 1937, which was prior to the time the partial payment law took effect in August, 1937. It is claimed by the attorney in the contract that the partial payment law cannot be in-

voked to interfere with law suits that he files because it would be violative of Article I, Section 10, of the Constitution of the United States, which provides that no state shall pass any law impairing the obligation of a contract. This provision of the Constitution is designed to prevent the State from breaching contracts that it makes and from passing laws that nullify contracts between persons, but it does not apply in this case for the reasons stated in 1 Cooley on Taxation, 4th Ed., 518, as follows:

> "* * * a contract between individuals cannot deprive the taxing power of any right to tax, nor can a municipality contract away the taxing power of the state."

The general rule on this question is well stated in Royal Mineral Association vs. Lord (U.S. C.C.A.) 13 Fed. (2d) 227, as follows:

> "It is urged that the act violates that provision of the Constitution of the United States which provides that 'no state shall * * * pass any * * * law impairing the obligation of contracts.' Article 1, Sec. 10. Giving the argument in that behalf due weight and consideration, it does not appear that the provision referred to is applicable here. The laws as to taxation and the amount of the levy in any particular year are subject to constant change. All contracts are made subject to the right and the power of the state to make such modification in the laws with respect to future taxation as may seem necessary. Contracting parties may not in effect agree that the state shall not modify its revenue laws, or shall not either increase or diminish the burden of taxation."

Other cases which adhere to this rule are S.C.S. Ry. Co. vs. Sioux City, 138 U. S. 98, 34 L. Ed. 899, 11 Sup. Ct. Rep. 226; and City of Rochester vs. Rochester Ry. Co., 182 N.Y. 99, 74 N.E. 953, 70 L.R.A. 773.

The language of the case of Jones vs. Williams, 121 Tex. 94, 45 S.W. (2d) 130, by the Supreme Court of Texas, indicates that this is the rule in Texas. In that case in an opinion by Chief Justice Cureton the court held valid a statute passed in 1931, which remitted interest and penalties on all State and County delinquent taxes provided the taxes were paid in full by January 31, 1932; and the court said:

> "The statutes from time to time have contained provisions for the collection of delinquent taxes by attorneys or others by contracts for a percentage of the tax, or taxes, interest,

and penalties collected. Vernon's Ann. Civ. St.,
Arts. 7335, 7344, Arts. 7264a, and 7335a. The
power to make contracts under these statutes is
subordinate to the general legislative power to
impose, increase, diminish, or remit penalties
for tax delinquencies, and the existence of such
contracts, where taxes have neither been paid nor
reduced to judgment, does not prevent the re-
mission statute from being effective, and the
delinquent taxpayer has the same right to pay
his taxes without paying penalties and interest
(so-called) that he would have had such contracts
never been made."

We believe that the above cited cases, and particularly
the quoted Texas case, support our belief that when the attorney
in this case entered into this contract he knew the state had the
inherent power to pass such taxing laws as it deemed best for its
citizens and that his contract would be subject to such laws.

These reasons lead us to the conclusion that these suits,
which were filed in December, 1938, against persons who had taken
advantage of the partial payment tax law and were complying there-
with, cannot be maintained; and no commission or fees can be claimed
by the attorney by virtue of these suits.

But let us consider the payments prior to the filing of
the law suits. The contract provided that the attorney was to re-
ceive a commission of 13% on all amounts which he was instrumental
in collecting. Clearly, if these delinquent taxpayers came in and
took advantage of the partial payment plan and began paying taxes
thereunder after they had received a notice from the tax attorney
we feel that he was thereby instrumental in collecting these taxes
and he is entitled to a commission thereon. The contract was to
expire on December 31, 1938, except that the attorney was to have
six months in which to prosecute suits to final judgment. But, as
we have already explained, these particular suits involved in this
opinion, could not be prosecuted, and, therefore, we are not con-
cerned with them. As far as we are concerned in this question the
contract expires December 31, 1938; and, therefore, the tax attor-
ney could not receive commissions on these collections after Dec-
ember 31, 1938.

Our answer to your first question is that if these delin-
quent taxpayers came in and began paying under the partial payment
law (Art. 7345c) without having received a notice from the tax at-
torney, or before receiving such a notice, then the tax attorney is
not entitled to a commission thereon, but if they came after receiv-
ing such a notice then he is entitled to a commission on the payments
made prior to December 31, 1938.

Our answer to your second question is that tax suits filed against persons who had taken advantage of the partial payment tax law, and were complying therewith cannot be maintained, and a tax attorney cannot claim commissions on collections by such suits; and, therefore, in this case the tax attorney is not entitled to commissions on collections made after December 31, 1938, from persons who were taking advantage of the partial payment tax law.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Rotsch
Assistant

CCR:FG

APPROVED:

ATTORNEY GENERAL OF TEXAS